Good morning, Your Honors, and may it please the Court, Timothy Snowball on behalf of the Appellant Freedom Foundation. I'd like to reserve two minutes for rebuttal, if I may. Your Honors, there are three reasons that the District Court should be reversed in this case. First, the District Court erred by failing to recognize the conflict of fact concerning the speech allowed by the Department and new employee orientations. Second, the District Court erred in its application of the legal standards governing viewpoint discrimination claims. And finally, the District Court also erred in its application of the legal standards governing equal protection claims in this context. Now, to my first point, the District Court erred by failing to recognize the conflict of fact concerning the speech allowed by the Department and new employee orientations. Counsel, the distinction that's being made here has to do with function rather than the nature of the speech, which appears to be permissible, you know, under the case law. So, and I know that at least some of the briefing has tried to cabin that decision, but it is a controlling law for us. So, if the Perry decision says that an employer or other entity can distinguish by function, why isn't what has happened here permissible? I don't think, Your Honor, frankly, we take any issue with the Perry case. I think the Perry case is absolutely on point insofar as that's the reason why the union, the exclusive representative is allowed in the door. And that's what the statute in this case states. And your client has no similar function. It has no relationship with the employees. It has no relationship with the employer. So, why isn't that the end of the discussion? I think the important distinction here is the recognition that there are essentially two forums at issue here at the new employee orientations. There's a forum in which the union is coming in, explaining the collective bargaining agreement, doing what it's supposed to do based on the statute, and there's an entire... Well, where do you find a forum defined by what someone is saying? The forum has to do with the nature of the event. The event is employee orientation. A forum may be a rally outdoors on a public square. It doesn't... And people may say completely conflicting things, but it doesn't change to more than one forum because of that. So, why isn't there a single forum here? Well, I would respectfully disagree, Your Honor, insofar as we're not talking about what we would consider to be a traditional public forum. We're talking about a government... Well, it isn't a public forum. That's the problem for your client. So, why isn't there a single forum here, which is a non-public forum, employee orientation? That's the forum. End of discussion. Because when the government opens a non-public forum to private speakers to opine on public matters, it has to police the standard that it has itself set. And these are some of the statements that are regularly made. You have a case that says that. Pardon me? You have a case that actually holds that. I would think the Rosenberger case, Your Honor, is the case that states that principle that when the government opens a private forum, the government doesn't have to let anybody in. The government has allowed in the unions, per the statute, to communicate with the police. You say it's made the decision. The statute has made the decision. It's not open. It's a closed forum, and there are certain people who are permitted to be in the closed forum by invitation or by statutory requirement. I don't understand how that's opening it up. If I may talk about some of the topics that are discussed regularly in employee orientation. The topics don't matter to the definition of the forum. That's what I'm getting at. I don't understand how what is said changes the nature of the forum. For example, suppose a manager gets up and says exactly what you're concerned about the union representative saying here. That person is in charge of the employees and is in charge of orienting them. So how can the nature of what that person says, even if it's offensive or wrong, change the nature of the forum itself? I don't think there's any dispute, Your Honor, about the nature of the forum in this case. I think per the Rosenberger case, what we're talking about is the government enabling private speech, enabling speech. And the type of speech in this case is the union coming in and saying that Freedom Foundation wants to defund the union, wants to defund the CBA, take away employee benefits, take away jobs, wants to get rid of unions entirely. I understand your concern there. I guess my question in part is, isn't the appropriate remedy, given the legitimate purposes of the union representative to explain how the collective bargaining agreement works and so forth, simply for the government to say to the state to this speaker, now look, you're not allowed to say that. We interrupt you. Stop that. Get back to the collective bargaining. Why does it open the door to having someone else come in and have a sort of extraneous debate that has nothing to do with training? I would agree, Your Honor. I think that would be an acceptable remedy in this case for the government to be reined in to the scope of what the union is supposed to be talking about here. The question is, has the government opened a benefit? Has the government created a metaphysical forum to use the language that Rosenberger employs? And the answer would be yes here. And so once opening that forum, once allowing the unions to talk about, basically use these orientations to target a political enemy, I mean, there's no real question about why the Freedom Foundation is being brought up at these new employee orientations. And the Freedom Foundation is seen as a political enemy to the unions, and that's why they're talking about these things. So having opened up the topic, the topic of the Freedom Foundation, the topic of the work we do, there are certain constitutional requirements that then kick in in order to keep other speakers out of the forum. The two requirements are the restrictions, the restriction in this case on the Freedom Foundation, cannot discriminate according to the viewpoint of the speaker. The point of this is subject compatibility. The second point is that the restriction has to serve a legitimate or a reasonable government interest. This is purpose compatibility. And the entire way to think about these two requirements are to determine what is the purpose of the forum and whether keeping someone out after having opened it would maintain the purpose for which the forum has been set aside. And again, in this case, the specific forum, the specific subject matter that the Freedom Foundation takes constitutional issue with is that portion of the forum that the department has allowed the union to speak on and to target the Freedom Foundation as a political enemy. Again, the union can come in and seemingly say whatever it wants. It's supposed to be cabined within the statute and the CBA talking about its role as collective bargaining agent and its responsibilities, and we take no issue with that. But the department allowing the union to go beyond those boundaries, beyond the statute, beyond the CBA, I mean, it's akin to, I don't think we take any issue with somebody coming in the union and saying, vote for Joe Biden or vote for Kamala Harris or vote for Donald Trump. We would say, well, maybe in the tenuous sense that has something to do with collective bargaining, perhaps something to do with the CBA. It's the same idea here. Attacking a political enemy using this time to attack the Freedom Foundation has absolutely nothing to do with their responsibility as exclusive representative, absolutely nothing to do with their responsibility pursuant to the contract. And so, again, viewpoint discrimination occurs where the speaker wishes to speak on a subject compatible with the forum, the forum in this case being that portion of the orientation set aside to discuss the Freedom Foundation. Therefore... Sir, but I guess what I'm saying is, isn't your appropriate remedy to ask for an injunction that the state not permit this in the future? And did you ask for that? We did not ask for that specifically, Your Honor, but I do think that's encompassed within the pleading, asking for whatever remedy the court thinks just and proper. I think it would fall within that category here. Again, I would point the court to the Rosenberger case as an example here. Well, who is to judge? I mean, you just seem to suggest that if the union representative said vote for so-and-so, that could be arguably germane to the issue of collective bargaining. I mean, who... Then you're asking the employer to essentially come in and police a line, which is subject to debate about what is and is not germane to the topic of collective bargaining. And then generally speaking, under our First Amendment doctrine, we would reject the idea that the government is supposed to come in and police another speaker's speech. I think as Your Honor pointed out, the line here, the scope here was drawn by the legislature. The legislature defined the interest that the government has in allowing the union to come in. And that's to talk about, this is a new employee orientation. We've all gone to new employee orientations. Here's our responsibilities. Here's what we're going to be doing for you. And to use that time to attack a political enemy has absolutely, again, nothing, absolutely The idea here, again, is speech-enabling activity by the government. In the Rosenberger case, the university said, we're going to have a fund to fund student publications. Why is this a First Amendment claim? And why isn't that just a claim under state law that they're exceeding the authorization of the statute? I can't speak to alternative case designs, Your Honor. Certainly, we're here on a federal issue of the Federal First Amendment, and we believe that the case law here supports our position. I wanted to go back to Judge Graber's comment on the Perry case, because I think in large measure, the district court, you know, almost exclusively, was relying upon the Perry case. Sure, because it distinguishes between status and viewpoint. So if a person has a right to present because of their status, it doesn't matter what they say. They still have that right. It doesn't become viewpoint discrimination if they say something that somebody doesn't like. Again, Your Honor, I would respectfully disagree. I don't think it's a matter of saying something the foundation doesn't like. I think it's saying something that goes beyond their status. The status justifies them talking about the benefits and their role as an exclusive representative. It does not give them... Status gave them access to the forum, period. Nobody else has status that gives them access to the forum. And we take absolutely no issue with them having status of the forum and coming in... So what is your client's status that would entitle them? Status, now. I'm not asking about viewpoint. I'm asking about status. What is their relationship to this forum? The government, by allowing the union to attack the Freedom Foundation as a political opponent, has opened the forum to political debate and political issues beyond their status. That is not an answer to my question. You don't have to answer it. But what is their status with respect to the new employees? What is your client's status? None. I would agree, and frankly, I don't think it turns on that, respectfully, Your Honor. I don't think it turns on status. Again... You have a single case in which the government has allowed someone into a non-public forum based on their status, where the court has said the government then has an affirmative duty to police what that entity says. I don't have a case on those exact facts, Your Honor. But again, I think that our two strongest cases here for our position are the Rosenberger case and Lamb's Chapel. In both of those cases, you had the government providing a benefit to speakers and denying a benefit, denying a platform, denying a forum to speakers based upon their viewpoint. And there is nothing in what the foundation would say if allowed into these orientations that would contradict the subject matter or the purpose that's been set aside by the government. Again, the union can say whatever it wants. The triggering factor here is the government allowing the union to exceed the boundaries prescribed by the legislature. And if there are no further questions, I reserve my time. Thank you. May it please the Court. Marcia Chen for the Department of Labor and Industries. The First Amendment does not require the Freedom Foundation be able to present at a new employee orientation for a government employer that it does not have any relationship with. So supposing the union person speaking at this non-public forum because it's a non-public forum because it's supposed to be training new employees and in the connection with the union and training them about how to utilize their collective bargaining rights and so forth. So supposing the union representative gets up and says, you know, I've been given 20 minutes and I think it's really more important for me to describe for 19 of those minutes why you should all be opposed to immigrants holding any jobs in this company. They're all a dangerous to the community and I really want to spend my entire time discussing that. And you're saying that that's all okay? No, Your Honor. The CBA provides the guardrails for the union speech. The CBA and state law restrict the union's presentation to talking about the union and talking about the collective bargaining. How do you enforce that is my question. So the department to the extent there is any exceeding of those guardrails, the department can raise those complaints with the union, can renegotiate the CBA contracts, and the department can cut off access. But the record here, and there is no conflict in facts, the record here shows the union was not discussing, not exceeding the bounds of the CBA or state law. The union was discussing talking about wages, talking about pensions, talking about health care. Those are squarely within the confines of the CBA and state law. Certainly, the Freedom Foundation might not like what it says, but not every slight is a constitutional issue. And certainly the union, if to the union, to the extent the union talks about political issues that are untethered to the union's work, that would be outside the bounds of the CBA. What conceivable connection did the comments about the Freedom Foundation have to training employees? The Freedom Foundation, the union rep, discussed the Freedom Foundation only to the extent necessary because the Freedom Foundation has opposed union priorities, opposed pensions, opposed health care benefits. But that's not the basis on which the legislature is set up this non-public forum. It's to train employees, not to discuss what the union may think of its opponents. Well, I would like to, I would like to clarify that the union is not limited to speaking about the new employee orientations or policies and procedures. Both state law and the CBA allow access to new employees so that the union can provide information about what it does so the new employee can decide whether or not to join the union or otherwise. And it's not limited. It might occur during the new employee orientation at this time in 2021, but it actually doesn't occur at the same time anymore today. It occurs at a separate date and time. So the topics are not limited to the policies and procedures or new employee orientations that the department is responsible for. The department has its own new employee orientation. And so the presentation for the union is really for access to the new employees so the union can talk about the union and the new employees can decide whether or not they want to join. And I would like to also emphasize the fact that no employee is required to attend the union presentation. The union presentation, they are free to drop off the Zoom call at any time if they disagree with the opinions expressed by the union. Additionally, the Freedom Foundation has alternative channels to communicate with the new employees. They can and have requested access to employee contact information. They have leafleted in the public areas of the department's parking lot and in other areas. And that is all still squarely allowed. And the Freedom Foundation has done that and can do that. So what we're fighting for over here is whether or not there's a status-based distinction. And I would agree with Judge Graber that the end of the discussion is Boardman and Perry. Boardman and Perry make it clear that a status-based distinction is both reasonable and viewpoint neutral. Counsel, during oral argument, keeps referring to Rosenberger. In Rosenberger, that did not involve a status-based distinction. In Rosenberger, the University of Virginia did not provide funds to a student publication that espoused religious views. But the U.S. Supreme Court specifically observed the fact that if that student publication wasn't a student publication at all, but was instead a religious organization, there might have been a basis for excluding those funds to a religious organization such as the church or other organization. So Rosenberger doesn't do nearly as much work as the Freedom Foundation suggests. Again, I would turn to the extent the Freedom Foundation suggests that there was limited discourse, that there was an extension of discussing political views outside of what was allowed by the CBA. I would point the court to Cornelius v. NAACP. In Cornelius v. NAACP, the federal employees invited voluntary organizations into a non-public forum for them to solicit donations from other federal employees. And specifically in Cornelius v. NAACP, the Supreme Court held that limited discourse about societal issues does not convert that forum into a different type of forum. It still remains a non-public forum. So there was no viewpoint discrimination here. The Freedom Foundation seems to suggest there was viewpoint discrimination simply based on what the union said. But the department would have allowed the union access to the presentation, regardless of what the union said, and would have denied access to the Freedom Foundation, even if the Freedom Foundation agreed with the union presentation in its entirety. So there was no viewpoint discrimination here. Again, I would also point to the Supreme Court's decision in Perry where it said that the union speech is its own. The department is not required under the Public Collective Bargaining Act to police the speech made during the presentation. The union speech is its own, and Perry confirms this. We would ask that the court affirm the decision of the district court that the status basis section is both reasonable and viewpoint neutral. May it please the court, I'm Scott Cronland for the Washington State Labor Council. Like other states with collective bargaining systems, Washington provides the exclusive representative with access to orientations for its bargaining unit. The plaintiff takes too narrow a view of the legitimate purpose in providing access to new employees. The new employees are coming into a bargaining unit that already has an exclusive representative and a collective bargaining agreement, and the government can legitimately conclude that the collective bargaining system will benefit if the new employees get to hear directly from the representative about what it's doing and about the collective bargaining. So I put to you the same hypo I put to your colleague. So supposing the union representative stands up and says, you know, the biggest threat to you, our new workers today is immigrant, illegal immigrants who are taking your job away. So I'm going to spend my entire time talking about what we can do about that. And I'm going to start out by saying these are evil people who should not be allowed into our country. They're rapists, they're murderers, you know, all this sort of stuff. And he goes on and you're saying that's all okay. It's about the union's activities. It's okay. The statute and the collective bargaining agreement say that the union can provide information about the union. It can't give a diatribe about immigration and the abstract. Well, all right. So supposing, forgive me, supposing it gives, in fact, it gives a diatribe, which you say is not permitted. What's the remedy? The state can say to the union, that's not our agreement. Our agreement is you can talk about the union. And so what about the point raised by Judge Graber that that, if the state did that, they would fear that they were using state action to limit speech. And so they would have, so they'd be very hesitant to use that remedy. Well, you know, in this case, as the district court found, the union speech was about the union, clearly within the scope of the freedom foundation is backed by a bunch of billionaires have to do with the union's activities. That was a wise crack. It's clear from the presentation that the presenter was saying that one of the things the union does is push back against organizations that are trying to defund your contract, that are trying to take away your benefits. That is one of the things the union does. And the new employees may have an interest in knowing that, just like they may have an interest in knowing about the members only benefits that the union provides, the disaster relief fund, how much dues are they have to decide. Do they want to join the union? Do they want to become involved in the union? This is just an orientation. They have an interest in knowing what is their representative doing, whether they like it or not. And it's up to the union to decide how to do, If they're coming in every week and selling Tupperware, it doesn't have to do with the union, then that's a harder case. I would agree that exceeds the union's mandate, and there might be an issue as to what happens. And so let's take that. That's a good example, because I'm old does two questions. Does the state have the obligation to say, stop it? This is not what you're invited to do. But if the state doesn't enforce its own rules, then there might be a question. Is it not doing that because it likes the viewpoint of what's being said? But we don't have that case that this is. Well, but my second question would be assuming the state did nothing, but it was clear that what the union representative who was only talking about by Tupperware was doing had nothing to do with the legislative purpose of inviting the union. Does the court then have the power to say you must not allow this to happen in the future? The court doesn't have the power to, at least the federal court, it's not a First Amendment issue. It might be a state law issue. Someone could go get a written mandate and require the government to follow the statute or perhaps the CBA. The First Amendment argument would be if you're letting the speaker talk about stuff that has nothing to do with what the statute and the CBA says are the grounds for access, then perhaps you could argue it's not reasonable to exclude others who want to sell Tupperware. But that's not this case. That's a harder case and a more interesting case. This is a case of a union that was allowed to come in for the purpose of talking about the union, and that's what the union was talking about. It's like Perry, where the representative was allowed to use the mail, quote, as representative of the teachers, and there was nothing in the record to suggest that the representative was using the mail for any other purpose. The case the plaintiff wants to set up is the case where the union is speaking completely outside of what the statute and the CBA say that it's allowed to speak about. But that's not this case. This is actually a much easier case than Perry, because in Perry, the CBA uniquely disqualified the rival union from using the internal email system. Other outsiders could use it. The exclusive representative could use it, but not the rival union. Here, nobody has access to the new employee orientations. No outsiders get to participate. No outsiders have ever gotten to participate, and the decision to exclude outsiders is in viewpoint discrimination, because it's not based on viewpoint, and it's perfectly reasonable, because this is during the workday, on work time. Unless the court has questions, we would urge that the court does not have to break any new ground to affirm the district court below, and that the district court was right that the tape here, the transcript, it was about the union. Thank you. Well, your honors, thank you again. Respectfully, this is the Tupperware case. Freedom Foundation is part of a conspiracy of dark forces against the union that want to take over your lives. Owned by millionaires and billionaires, and the only remedy for you is to join a private political association. That point, in particular, was very interesting, the idea that the legislature's interest in this case was to open up taxpayer-funded venues with public employees for recruitment with private political organizations. That's not the purpose of these new employee orientations. Why isn't your remedy not a First Amendment issue, but going into state court to get an injunction against future misuse of the situation? Because our position, your honor, pursuant to cases like Rosenberger and Lamb's Chapel, would be that once the government has opened up a forum, has enabled speech, and then excludes other speakers who wish to speak on the same topics that have been opened up... Counsel, it's not only the same topics. In Rosenberger, all of the student groups had the same status. They were all student groups. Your client does not have the same status as the collective bargaining representative. So it's a different situation, it seems to me. I think that we have different... I would agree, your honor, we have different statuses insofar as the speech is cabined within the purpose for which the unions are supposed to be there. If I'm invited to give a speech and talk about being an attorney, and what my job is as an attorney, I don't have to gripe about judges, or I don't have to gripe about opposing counsel. That would be outside the scope of what my job is as an attorney. If I'm invited in as a third party to talk about health care, I'm not free to opine on pro-choice or pro-life. If I'm someone invited in to talk about... Why not? I mean, there's debates about what should be covered under health insurance, right? Under the Affordable Care Act. Who's going to piece that line? I think that's the point, your honor. Those public topics, those topics of contentious public concern are exactly the kind of topics that are encompassed by the First Amendment. How do you deal with Cornelius? With Cornelius? I think, again, those are different cases. I think that Cornelius, Perry, and Boardman, those cases dealing with the key distinctions, and I see my time is up. The key distinctions in Perry, Boardman, and any other cases cited by my friends on either side are the unions in those cases did not go beyond what was prescribed by the statute in the CBA. Those are factually distinct from what we have in this case, and we ask the court to reverse. Thank you. Thank you, counsel. This matter is submitted.
judges: GRABER, SUNG, Rakoff